## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 08-CR-197-JHP |
| | ) |
| MARCO A. HENDRICKSON, | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Before the Court are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and Memorandum in Support,[1] Government's Response in Opposition to Defendant's [sic] § 2255 Motion,[2] Defendant's [sic] Reply to Government's Response in Opposition to Defendant's [sic] § 2255 Motion,[3] Defendant's [sic] Amendment to 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Supplement),[4] Government's Response in Opposition to Defendant's [sic] Amended § 2255 Motion,[5] Defendant's [sic] Reply to Government's Response in Opposition to Defendant's [sic] Amended § 2255 Motion.[6] For the reasons set forth below, Petitioner's motions are **DENIED**.

## BACKGROUND

Petitioner Marco Hendrickson (Petitioner) pled guilty, without a plea agreement, to

---

[1] Docket No.'s 104-05.

[2] Docket No. 109.

[3] Docket No. 136.

[4] Docket No. 137.

[5] Docket No. 138.

[6] Docket No. 139.

1

interference with commerce and possession of a firearm in furtherance of a crime of violence.[7] Petitioner was sentenced by this Court to 271 months of imprisonment on April 29, 2009 and judgment was entered on May 6, 2009.[8] On October 2, 2009, Petitioner, acting *pro se*, filed a document this Court characterized as a Notice of Appeal.[9] The filing was later re-characterized as motion to file appeal out of time.[10] Petitioner had attached to the filing correspondence between himself and his trial counsel, Stephen Knorr (Knorr), in which the two disagreed as to whether or not counsel was instructed to appeal.[11]

On October 9, 2009, the Court directed both Knorr and the Government to respond to Petitioner's motion.[12] After reviewing the motion and responses, this Court denied Petitioner's motion to appeal out of time.[13] Petitoner's notice of appeal was filed in the Tenth Circuit and ultimately dismissed upon Government motion.[14] On April 29, 2010, Petitioner filed a motion under 28 U.S.C. § 2255 on the sole ground that Knorr was ineffective for failing to timely file a notice of appeal, and that Petitioner was denied his right of appeal as a result.[15] The Court ordered the

---

[7]Docket No. 76.

[8]*Id.*

[9]Docket No. 91.

[10]Docket No. 95.

[11]*Id.*

[12]Docket No. 96.

[13]Docket No. 99.

[14]Docket No. 100.

[15]Docket No.'s 104, 105.

Government to respond to this motion.[16]

Upon the Government's response, Petitioner filed a reply to Government's response and an amendment to his original § 2255 motion.[17] In these filings, Petitioner raises new two new grounds in addition to his original ground for relief: that Knorr was ineffective for failing to challenge and/or object to the Career Offender enhancement at sentencing, and that Knorr was ineffective for failing to challenge and/or object to the ten-year mandatory minimum sentence imposed upon Petitioner's conviction under 18 U.S.C. 924(c).[18] The Government responded to these filings, and Petitioner filed a subsequent reply to Government's response.[19] On March 11, 2011, Petitioner filed motion with this Court stating that his § 2255 motion was ripe and ready for review.[20]

Petitioner also moved for an evidentiary hearing regarding Knorr's alleged ineffectiveness for failing to timely file a notice of appeal and requested the appointment of counsel to assist him at said hearing.[21] The Court granted this motion and appointed counsel for the hearing.[22]

## DISCUSSION

As noted above, Petitioner alleges three distinct instances where trial counsel Knorr provided ineffective assistance, alleging (1) that Knorr was ineffective for failing to timely file a notice of

---

[16] Docket No. 106.

[17] Docket No. 136, 137.

[18] Defendant's Reply to Government's Response in Opposition to Defendant's § 2255 Motion at 3-5, Docket No. 139.

[19] Docket No.'s 138, 139.

[20] Defendant's Motion to Have Counsel Appointed and for Court to Conduct an Evidentiary Hearing at 1-2, Docket No. 140.

[21] *Id.*

[22] *See* Docket 154.

3

appeal, (2) that Knorr was ineffective for failing to object to the Career Offender enhancement at sentencing, and (3) that Knorr was ineffective for failing to object to the ten-year mandatory minimum sentence imposed upon Petitioner's conviction under 18 U.S.C. 924(c).

Petitoner's claim of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*.[23] Specifically, Petitioner must demonstrate that: (1) Knorr's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense.[24] Failure to establish either prong of the *Strickland* test will result in a denial of Petitioner's claims.[25]

While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised when applying the first prong of the *Strickland* test. As the Supreme Court cautioned in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[26]

In addition, the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance.[27] The Tenth Circuit has indicated that before representation will be considered ineffective, it must have made the trial "a mockery, sham, or farce,

---

[23] 466 U.S. 668, 688-89 (1984).

[24] *Id*. at 688-92.

[25] *Id.* at 700.

[26] *Id.* at 689.

[27] *Id.*

4

or resulted in the deprivation of constitutional rights."[28]

Even if the Petitioner can prove deficient performance, he must also demonstrate prejudice, showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[29] The *Strickland* Court articulated the test as being whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[30] The Court has since cautioned, however, that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[31] The Court "may address the performance and prejudice components in any order, but need not address both if [Petitioner] fails to make a sufficient showing of one."[32]

## A. Trial Counsel's Failure to File a Notice of Appeal

In his first proposition of error, Petitioner alleges Counsel Knorr ignored Petitioner's direct instructions to file a notice of appeal.[33] This raises an issue atypical of the standard *Strickland* analysis.[34] In this situation, the Supreme Court has held that "a lawyer who disregards specific

---

[28] *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1537 (10th Cir. 1994); *see also Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.1997) (holding counsel's performance must have been "completely unreasonable, not merely wrong," to be constitutionally ineffective).

[29] *Strickland*, 466 U.S. at 687.

[30] *Id.* at 687.

[31] *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993).

[32] *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999).

[33] *See* Evidentiary Hearing Transcript at 25:19-23, Docket No. 157.

[34] *See Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) ("Today's case is unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself").

instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," thus meeting the "deficient performance" prong of *Strickland*.[35] To show prejudice in these circumstances the Petitioner need only demonstrate that "counsel's constitutionally deficient performance deprived a defendant of an appeal that he otherwise would have taken."[36] Ultimately, "the question whether a given defendant has made th[at] requisite showing will turn on the facts of a particular case.[37]

1. The Evidentiary Hearing

There is no argument that Petitioner and Knorr spoke about whether or not to file an appeal, however the two disagree over whether or not Knorr was instructed by Petitioner to file an appeal. An evidentiary hearing was held before this Court to address this factual dispute. At the hearing, three witnesses testified: Petitioner, his mother, and Counsel Knorr.

Petitioner unequivocally testified that Knorr was specifically instructed to file a notice of appeal.[38] Petitioner's mother also testified that Petitioner had told her around Mother's Day of 2009 that he intended to appeal.[39] Petitioner's mother went on to testify that she had specifically spoken to Counsel Knorr about Petitioner's desire to appeal in May of 2009.[40] Despite repeatedly stating in open court that she had discussed Petitioner's intent to appeal with Knorr, Petitioner's mother did not reference these conversations in her July 15th, 2011 affidavit regarding her knowledge of

---

[35] *Id.* at 477

[36] *Id.* at 484.

[37] *Id.* at 485.

[38] *See* Evidentiary Hearing Transcript at 25:19-23, Docket No. 157.

[39] *See id.* at 41:20-23.

[40] *See id.* at 49:14-25.

6

Petitioner's desire to appeal.[41] The mother's testimony became increasingly suspect as she attempted to explain this discrepancy.

Knorr tells a much different story, one which evidences Counsel's careful attention to Petitioner's appellate rights throughout the trial process. Counsel first testified that he advised Petitioner against entering into a plea agreement with the Government.[42] Counsel explained this strategy, saying: "I don't like to enter plea agreements because of the appellate waivers in them."[43] Even at this early juncture, Counsel was careful not to foreclose Petitioner's opportunity for appeal.

Next, Counsel described his conversations with Petitioner prior to sentencing regarding his prospects for appeal. Knorr testified he spoke to Petitioner specifically about how Counsel felt the guideline calculations of Petitioner's sentence were correct, but also noted how failure to object to sentencing guideline calculations may impact appeal.[44] Petitioner's testimony does not specifically refute this conversation.

Petitioner was sentenced on May 6, 2009, with the time for filing a notice for appeal expiring on May 20th.[45] Counsel testified that he had a final conversation regarding appeal with Petitioner on May 13, 2009.[46] During this conversation, Counsel testified that he advised Petitioner that he could still file a notice of appeal, but that Counsel believed there to be no appealable issues.[47]

---

[41]*See id.* at 53:14-54:25.

[42]*Id.* at 63:3-7.

[43]*Id.* at 62:23-25.

[44]*Id.* at 66:7-22.

[45]*Id.* at 68:22-69:6. *See also* Judgment and Commitment at Docket 76.

[46]*See* Evidentiary Hearing Transcript at 69:9-18, Docket No. 157.

[47]*Id.* at 69:22-24.

Counsel further testified that he discussed the prospect of filing an *Anders* brief on behalf of the petitioner.[48] According to Counsel, Petitioner agreed in principal that an appeal was not viable.[49]

Counsel testified succinctly that at no time during this conversation did Petitioner state that he wanted to appeal.[50] Counsel further testified that, according to his recollection and records, he had no contact with Petitioner's mother prior to a phone call on October 13, 2009, and denied ever telling Petitioner's mother that Counsel would file an appeal on behalf of Petitioner.[51] According to Counsel, Petitioner issued only one caveat to foregoing appeal, that Counsel question Petitioner's father on whether or not to file an appeal.[52] It was Counsel's understanding that only if Petitioner's father felt an appeal would be appropriate, would Counsel file a notice of appeal.[53]

Counsel testified that he spoke with Petitioner's father on May 19th, and had resolved the issue in favor of not filing an appeal.[54] Counsel, believing that he had followed Petitioner's instructions to the letter, did not file a notice of appeal.[55] Counsel testified that he did not communicate with Petitioner again until September, when Petitioner sent Counsel a letter inquiring about the status of his appeal.[56] Counsel responded to this inquiry by letter, reiterating the previous

---

[48] *Id.* at 69:24-25.

[49] *Id.* at 77:5-7.

[50] *Id.* at 73:12-15.

[51] *Id.* at 79:20-81:7

[52] *See Id.* at 73:16-74:20.

[53] *Id.* at 74:16-20, 77:5-7.

[54] *See id.* at 75:21-76:23.

[55] *Id.* at 77:5-7

[56] *Id.* at 77:8-14.

8

discussions, and stating that, consistent with Petitioner's instructions and based on the discussion with Petitioner's father, no notice of appeal had been filed.[57]

2. Ineffectivness Analysis

In order to show deficient performance in this instance, Petitioner must first show that Counsel either failed to discuss options for appeal or failed to follow his express instructions with respect to filing a notice of appeal.[58] As both parties agree, and the record reflects, that appeal options were discussed, the Court is left with a credibility battle as to the nature of Petitioner's instructions regarding appeal.

In assessing the credibility of the three witnesses, the Court has considered all facts and circumstances shown by the evidence that may impact the credibility of each witness, including, but not limited to: "the means of knowledge for each witness, his or her ability to observe, and his or her strength of memory; the manner in which each witness might be affected by the outcome of the hearing; the relationship each witness has to either side in the case; and the extent to which each witness was either supported or contradicted by other evidence presented during the hearing or previously by affidavit."[59]

Petitioner first attempts to support his allegation that he instructed Counsel to appeal by stating an appeal was the very reason he refused the Government's plea agreement and plead to higher guideline minimum.[60] Counsel refuted this argument in his response letters, and stated that

---

[57]*Id.* at 78:4-7. *See also* Motion to File Appeal Out of Time at 3-5, Docket No. 95.

[58]*Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

[59]*U.S. v. Scanlon*, No.'s 04-cr-224/06-cv-1975, 2011 WL 250668 at *1 (D.Colo.Jan. 26, 2011)

[60]Motion to File Appeal Out of Time at 5, Docket No. 95

9

while the plea agreement had a lower minimum guideline range, it had a higher maximum range.[61] The Court notes that there is an eleven-month disparity between the calculated guideline minimum for the plea agreement (262 months) and the calculated guideline minimum for the Petitioner's actual plea (271 months). Although this minimal disparity offers some credible support for the proposition that Petitioner was considering an appeal before sentencing, it does not demonstrate that Petitioner requested an appeal after his discussions with Counsel post-sentencing.

Petitioner also denies tasking Counsel with asking Petitioner's father about whether or not Petitioner should file an appeal.[62] Petitioner's mother further questions why Petitioner would even involve his father in the decision-making process, alleging that the father "has a mental illness."[63] In spite of these naked assertions, the Court necessarily questions why Counsel, a seasoned defense attorney with full knowledge of his duty to his client, would defer the important decision of whether or not to file a notice of appeal to an unknown third-party, unless directed to do so by his client. Considering this and the general demeanor of both Petitioner and his mother during their testimony, the Court finds that both Petitioner and his mother lacked credibility in their testimony regarding the father's involvement.

Finally, Petitioner states that he told Counsel Knorr directly "I want to appeal" and supports this assertion with the testimony of his mother that she talked to both Petitioner and Counsel about

---

[61]*Id.* at 7.

[62]*See* Evidentiary Hearing Transcript at 36:16-23, Docket No. 157. Petitioner states that he only instructed Knorr to call Petitioner's father to inform him that he intended to appeal. *Id.*

[63]*Id.* at 38:12-17.

the filing of this alleged appeal.[64] Counsel specifically refutes both of these allegations.[65] The Court considers Petitioner's testimony on this issue in light of the self-interest involved, and finds this testimony lacks credibility. The Court notes inconsistences throughout Petitioner's direct and cross-examination, as well as inconsistencies between Petitioner's testimony and the letters exchanged with Counsel, that support this finding.[66] The Court further gives little weight to the disputed, inconsistent testimony of Petitioner's mother stating that she spoke to Counsel before the time for filing a notice of appeal had run.[67]

After observing and listening to each of the witnesses' testimony, The Court finds Counsel Knorr, to be the most credible. Unlike Petitioner and his mother, Counsel remained consistent throughout direct, cross-examination, and re-direct examination, and Counsel's testimony was also consistent with Counsel's letters to Petitioner and Counsel's affidavit to the Court on the matter. Because of the credibility gap, the Court ultimately finds that Petitioner did not direct Counsel to file a notice of appeal, and in fact directed Counsel not to file a notice of appeal unless Petitioner's father said otherwise. Based on this finding, Counsel's performance in failing to file the notice was not deficient. As Counsel's performance was not deficient, the Court need not address the prejudice prong of the modified *Strickland* analysis.

---

[64]*See id.* at 41:20-42:12.

[65]*Id.* at 72:23-73:15, 78:18-23, 80:1-81:13.

[66]*See id.* at 25:1-23 (stating directive to appeal was in May 13th jail conversation); *but see id.* at 32:7-33:16 (explaining testimony regarding post-conversation phone call), Motion to Appeal Out of Time at 5, Docket No. 95 (stating Petitioner believed notice of appeal had already been filed before a May 7, 2009 jail conversation).

[67]*See id.* at 43:21-45:10 (stating she had spoken with Knorr); *but see* 51:4-25, 53:14-55:1 (backtracking on statements about other calls).

11

**B. Petitioner's Other Propositions of Error**

Petitioner's other propositions of error allege that Counsel Knorr was ineffective for failing to challenge and/or object to the Career Offender enhancement at sentencing, and that Knorr was ineffective for failing to challenge and/or object to the ten-year mandatory minimum sentence imposed upon Petitioner's conviction under 18 U.S.C. 924(c).

In reviewing these claims, the Court reiterates that there is "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[68] It is the Petitioner's burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[69]

In this case, the hearing on Petitioner's first proposition in error effectively demonstrates that Counsel's decision not to pursue objections to the Career Offender enhancement was the result of reasoned and sound trial strategy. In his direct examination, Counsel discusses at length the inapplicability of the Supreme Court's decision in *Chambers v. United States* to Petitioner's sentencing enhancement under the Armed Career Criminal Act (ACCA).[70] Further, Counsel testified that he advised Petitioner that the ACCA enhancement would still apply even if Petitioner's escape conviction was not considered a "crime of violence" in the wake of the *Chambers* decision.[71] As there were no other valid challenges to the ACCA enhancement, Counsel's decision not to challenge the enhancement is certainly within the wide range of reasonable professional assistance, and

---

[68] Strickland, 466 U.S. at 689.

[69] *Id.*

[70] Evidentiary Hearing Transcript at 70:12-72:1, Docket No. 157.

[71] *Id.* at 71:22-72:1.

therefore not deficient.

As to Counsel's failure to object to the ten-year mandatory minimum sentence imposed under the discharge enhancement in 18 U.S.C. § 924(c)(1)(A)(iii), the Court finds that this enhancement was properly applied. Although Petitioner did not discharge the firearm, the mandatory minimum is proper based on his co-conspirator's discharge of a firearm in furtherance of a crime of violence.[72] Because the mandatory minimum was properly applied, Counsel's performance was not deficient for failing to raise an objection.

## **CONCLUSION**

For the reasons cited herein, Petitioner Marco Hendrickson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and his subsequent Amendment to that motion[73] are hereby **DENIED**.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma

---

[72]*See United States v. Foreman*, 87 Fed. Appx. 107, 110-111 (10th Cir.2004) ("We hold that, for purposes of a *Pinkerton* instruction, a distinction does not exist between principals and aiders and abettors because no basis for such a distinction exists in the statute or caselaw")).

[73]Docket No.'s 104-05, 137.